IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
MARIYA TOLCHEVA, and
VLADISLAV TOLCHEV                                   Civ. No.

                              Plaintiffs,

                                                      **COMPLAINT**

-against-

RAMON TALLAJ, JULIO ALBARRAN, JUAN T.
ESTEVEZ, and CUATRO, LLC

                              Defendants.
---------------------------------------------------------------X

Plaintiffs Mariya Tolcheva and Vladislav Tolchev, by and through their attorneys Lowenstein Sandler LLP, bring this complaint against Ramon Tallaj, Julio Albarran, Juan T. Estevez, and Cuatro, LLC (collectively, "Defendants"), alleging as follows:

## NATURE OF ACTION

1. In early 2013, Plaintiffs were induced to wire $200,000 into an account controlled by Defendants Julio Albarran, Juan T. Estevez, and Cuatro, LLC by promises made to them by Ramon Tallaj. Dr. Tallaj promised Plaintiffs that if they invested $200,000 in Cuatro, they would make 100% or more on their investment because he was in the process of negotiating a sale of Cuatro that would result in huge profits. Dr. Tallaj informed Plaintiffs that if Cuatro was not sold within three months, Cuatro would return their money.

2. For several months, Defendants reassured Plaintiffs that the sale of Cuatro was close, and that they would get their money back if the sale did not take place on time. By late 2014, however, Defendants stopped communicating with Plaintiffs. Plaintiffs' many attempts to get Defendants to provide information about their investment were unsuccessful. As recently as

March 2016, Cuatro's Chief Financial Officer promised to send copies of relevant documents to Plaintiffs, then failed to provide the documents and stopped responding to inquiries.

3. As a result, Plaintiffs have no alternative but to bring this action in order to be made whole.

## PARTIES

4. Plaintiff Mariya Tolcheva is a resident of the State of New Jersey.

5. Plaintiff Vladislav Tolcheva is the son of Mariya Tolcheva and is a resident of the State of New Jersey.

6. Defendant Ramon Tallaj is a medical doctor licensed by the State of New York who regularly conducts business in the State of New York. Upon information and belief, Dr. Tallaj is a resident of the State of New York.

7. Defendant Julio Albarran is a medical doctor licensed by the State of New York who regularly conducts business in the State of New York. Dr. Albarran has identified himself to Plaintiffs as a Manager or Officer of Cuatro.

8. Defendant Juan T. Estevez is a medical doctor licensed by the State of New York who regularly conducts business in the State of New York. Dr. Estevez has identified himself to Plaintiffs as a Manager or Officer of Cuatro, and is identified in publicly available materials as the Chief Executive Officer of Cuatro.

9. Defendant Cuatro is a limited liability company organized under the laws of the State of New York. It maintains a business at 93-20A Roosevelt Avenue, Suite 3C, Jackson Heights, New York, 11372.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1367, because there is diversity of citizenship between the parties. Specifically, Plaintiffs are

citizens of the State of New Jersey, individual Defendants are all citizens of the State of New York, and Cuatro is a New York LLC. The amount in controversy exceeds the sum of $75,000.

11. This Court has personal jurisdiction over the Defendants under the laws of the State of New York and Rule 4 of the Federal Rules of Civil Procedure because the Defendants regularly conduct business within the State of New York and committed the acts complained of within this judicial district.

12. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the Plaintiff's claims occurred in this District and a substantial part of the property that is the subject of the action is situated in this District.

## GENERAL ALLEGATIONS

13. In January 2013, Dr. Tallaj approached Mariya Tolcheva to solicit an investment in Cuatro. Dr. Tallaj described Cuatro's business to Ms. Tolcheva as being in the health insurance area. Dr. Tallaj informed Ms. Tolcheva that Cuatro was in the process of being sold to a large, national health insurance company. Dr. Tallaj, stated that Cuatro was in urgent need of a cash payment in order to satisfy certain obligations incidental to the sale of the business. Dr. Tallaj informed Ms. Tolcheva that the money was needed that day, and that if she invested money in Cuatro that day, she would be guaranteed at least double her money back within a few months when the sale was consummated. Dr. Tallaj told Ms. Tolcheva that if the sale of Cuatro did not go through within a few months, any money invested would be refunded in full. Based on these representations, Ms. Tolcheva agreed to invest $200,000 in Cuatro by the end of that day.

14. Ms. Tolcheva then discussed the investment proposed by Dr. Tallaj with her son, Vladislav Tolchev, who was also her business partner in certain investments. They agreed that Mr. Tolchev would wire transfer $200,000 to Cuatro based on the representations made by Dr.

Tallaj. Dr. Tallaj gave them the necessary account information for Mr. Tolchev to wire $200,000 directly into the Cuatro account.

15. On January 11, 2013, Mr. Tolchev wired $200,000 from his personal account at Bank of America to the account designated by Dr. Tallaj.

16. Several weeks later, Ms. Tolcheva and Mr. Tolchev arranged a meeting with Dr. Tallaj to discuss the $200,000 investment. The meeting took place at Dr. Tallaj's office in New York City. During the meeting, Dr. Tallaj reiterated that Cuatro would be sold to large health insurance company and Plaintiffs would receive more than double their investment. Dr. Tallaj again assured Plaintiffs that their money would be returned to them if the sale of Cuatro did not go through.

17. After that meeting, Plaintiffs became concerned that they did not have any acknowledgement from Cuatro of the $200,000 they had wired into the Cuatro account in January. They contacted Dr. Tallaj and Cuatro, and requested an acknowledgement of the investment. In April, 2013, Vladislav Tolchev received documents from Cuatro that he was asked to sign. He signed and returned the documents to Cuatro. He then received a letter from Dr. Estevez of Cuatro dated April 15, 2013 attaching a certificate, signed by Drs. Albarran and Estevez, supposedly evidencing Mr. Tolchev's ownership of 200,000 Membership Interests of Cuatro. The certificate was dated January 11, 2013. The certificate included a statement that a copy of the operating agreement of Cuatro would be provided to them upon written request. The letter said that a copy of an executed subscription agreement was enclosed, but no such agreement was actually enclosed.

18. For the next several months, Plaintiffs periodically inquired of Dr. Tallaj about the progress of the sale of Cuatro. At first, Dr. Tallaj continued to reassure them that the sale was in progress and they would be receiving their money back shortly. However, by the summer of 2014, Dr. Tallaj stopped returning their calls. Plaintiffs also attempted to call Dr. Estevez at the main office of Cuatro; each time they called, they were asked to leave a message for Dr. Estevez, which they did. However, Dr. Estevez never returned any of their messages.

19. By August 2014 Plaintiffs became concerned about their $200,000 investment. Instead of communicating with Dr. Tallaj, who had stopped returning their calls, they had their attorney write a letter to Dr. Estevez asking him to provide them with copies of (1) the subscription agreement that Cuatro identified in the April 15, 2013 letter to Mr. Tolchev, (2) Cuatro's operating agreement, as identified on the certificate provided to Mr. Tolchev, and (3) recent financial statements of Cuatro.

20. Dr. Estevez did not respond to Plaintiffs' request for information, so Plaintiffs again wrote to him in October 2014 asking for the same information. This time, a person identifying herself as Concetta Pryor stated in response to the letter that she would send the requested information, but it never arrived.

21. In March 2016, concerned that they had been defrauded out of $200,000, Plaintiffs asked their attorney to contact Cuatro to try to obtain confirmation of their investment and relevant documentation. In response to a letter sent on March 1, 2016, Ms. Pryor contacted Plaintiffs' attorney and stated that she would send the requested documents immediately. Ms. Pryor also claimed that she had sent the documents as requested in 2014, but could not explain why they had never arrived at their destination.

22. No documents were received. Cuatro also did not respond to a follow up letter requesting the same information. Thus, as this date, Plaintiffs have never received a copy of Mr. Tolchev's subscription agreement, a copy of Cuatro's operating agreement, any financial information concerning Cuatro, or any information concerning their investment, despite repeated requests.

### AS AND FOR A FIRST CAUSE OF ACTION

### Fraud/Conspiracy

23. Plaintiffs repeat and reallage the allegations set forth in paragraphs 1-22 above as if fully set forth herein.

24. In order to induce Plaintiffs to invest $200,000 in Cuatro, Dr. Tallaj informed them that Cuatro would be sold within two or three months, that they would receive at least twice what they invested when Cuatro was sold, and that they would receive their money back if Cuatro was not sold. At the time that he made these statements, Dr. Tallaj knew that they were not true.

25. In reliance upon these statements, Plaintiffs invested $200,000 in Cuatro. But for these statements, Plaintiffs would not have invested in Cuatro.

26. Thereafter, Dr. Tallaj continued to misrepresent to Plaintiffs that Cuatro was being sold, that they would receive at least twice what they invested when Cuatro was sold, and that they would receive their money back if Cuatro was not sold.

27. As a result of Dr. Tallaj's assurances, Plaintiffs did not immediately demand the return of their money and, instead, Mr. Tolchev signed documents in order to make sure that there was a record of the investment. Drs. Estevez and Albarran conspired with Dr. Tallaj by signing a certificate supposedly evidencing Mr. Tolchev's ownership of membership interests in Cuatro without any intention of recognizing Mr. Tolchev's investment. . Plaintiffs relied upon the representations made by Drs. Albarran and Estevez in the "certificate" they signed and the letter signed by Dr. Estevez in not demanding the return of their investment. Dr. Estevez's participation in the conspiracy is further evidenced by his refusal to return a single telephone call from Plaintiffs when they inquired about their investment, and his steadfast refusal to respond to the multiple requests for information made by Plaintiffs

28. As a result of Defendants' conduct, Plaintiffs have suffered monetary damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### Breach of Contract – Inducement

29. Plaintiffs repeat and reallage the allegations set forth in paragraphs 1-28 above as

if fully set forth herein.

30. In order to induce Plaintiffs to invest in Cuatro, Dr. Tallaj committed both personally and on behalf of Cuatro that he and Cuatro would return their money if Cuatro was not sold within a matter of months. Dr. Tallaj acted on behalf of Tallaj, and had apparent and/or actual authority to act on behalf of Cuatro, and his acts were later ratified by the conduct of all of the Defendants.

31. Plaintiffs invested $200,000 in Cuatro based on the commitment by Dr. Tallaj and Cuatro that they would return Plaintiffs' money if Cuatro was not sold within a matter of months.

32. Plaintiffs performed their end of the bargain; that is they wired $200,000 to Cuatro as requested by Dr. Tallaj.

33. Dr. Tallaj and Cuatro breached their agreement to return Plaintiffs' money after it became clear that Cuatro would not be sold within a matter of months.

34. As a result of Defendants' conduct, Plaintiffs have suffered money damages.

## AS AND FOR A THIRD CAUSE OF ACTION
### Breach of Contract – Performance

35. Plaintiffs repeat and reallage the allegations set forth in paragraphs 1-34 above as if fully set forth herein.

36. Plaintiffs invested $200,000 in Cuatro on January 11, 2013.

37. Cuatro undertook to treat Plaintiffs as an owner of membership interests in Cuatro, in accordance with the undertakings set forth in, among other things, the April 15, 2013 letter from Dr. Estevez, the certificate of ownership dated January 11, 2013 (but only sent to Mr. Tolchev on April 15, 2013), and Cuatro's operating agreement. Cuatro has breached multiple promises made in those documents and others.

38. As a result of Defendants' conduct, Plaintiffs have suffered money damages.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor for the following relief:

(a) awarding Plaintiffs damages against Defendants for Defendants' fraud, including such amounts that Plaintiffs were fraudulently induced to invest in Cuatro as well as punitive damages;

(b) granting Plaintiffs equitable relief in the form of rescission of their agreement to invest in Cuatro and return to them of their investment;

(c) awarding Plaintiffs damages against Defendants for Defendants' breach of contract, including such amounts that Plaintiffs invested in Cuatro;

(d) awarding Plaintiffs compensatory damages against Defendants as a result of such amounts that Plaintiffs invested in Cuatro, and equity and good conscience requiring Defendants to pay such amounts;

(e) awarding Plaintiffs prejudgment interest, as well as their costs and reasonable attorneys' fees of pursuing this action; and

(f) awarding such other relief as the Court deems just and proper.

LOWENSTEIN SANDLER LLP

By: _____
R. Scott Thompson
1251 Avenue of Americas
New York, NY 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: sthompson@lowenstein.com

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury of all claims that are so triable.

Respectfully submitted,

LOWENSTEIN SANDLER LLP
*Attorneys for Plaintiffs*

Dated: April 8, 2016

By: _____
R. Scott Thompson
1251 Avenue of the Americas
New York, New York 10029
Tel.: (973) 597-2532
Fax: (973) 597-2533
sthompson@lowenstein.com