**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIYA TOLCHEVA, and VLADISLAV TOLCHEV <br><br> Plaintiffs, <br><br> -against- <br><br> RAMON TALLAJ, JULIIO ALBARRAN, JUAN T. ESTEVEZ, and CUATRO, LLC <br><br> Defendants. | No. 1:16-cv-02648-AJN |

**DOCUMENT ELECTRONICALLY FILED**

BRIEF IN SUPPORT OF DEFENDANT RAMON TALLAJ'S
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND
TO COMPEL ARBITRATION

Date: June 10, 2016

**MEDENICA LAW PLLC**
3 Columbus Circle, 15th Floor
New York, NY 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
Email: OMedenica@Medenicalaw.com

*Attorneys for Defendant Ramon Tallaj*

Table of Contents

**PRELIMINARY STATEMENT**…………………………………………………………………………1

**STATEMENT OF FACTS**………………………………………………………………………....1

**LEGAL ARGUMENT**………………………………………...…………………...………….4

    I.    The Claims Cannot Withstand the Standard for Dismissal for Failure to State a Claim
        under Fed. R. Civ. P. 12(b)(6)……………………………………………………......…4

           A)    The Complaint Fails to State a Claim Against Tallaj for Securities Fraud in
                 Violation of 10(b) of the 1934 Act……………………........................................6

           B)    The Complaint Fails to State a Claim Against Tallaj for Control Person
                 Liability   Under Section 20(a) of the 1934 ……………………………………...9

           C)    Plaintiffs' Securities Fraud Claims are Untimely……………………………...9

           D)    The Complaint Fails to State a Claim Against Tallaj for Fraud/Conspiracy....10

           E)    The Complaint Fails to State a Claim Against Tallaj for Breach of
                 Contract………...….....................................................................................................11

    II.    Plaintiffs Should be Compelled to Arbitrate Their Claims Pursuant to the Operating
        Agreement that They Executed…………………………………………………………...12

**CONCLUSION**……………………………...……………………….………………...…..13

# Table of Authorities

**Cases**

Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995)……………………………………..7

Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012)……………...…5

Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006)……………………………12

Ashcroft v. Iqbal, 556 U.S. 662 (2009)...……………………………………………..…4, 5, 6

Atkinson v. Mobil Oil Corp., 205 A.D.2d 719 (2nd Dept.1994)……………………………..11

Bell Atlantic v. Twombly, 550 U.S. (2007)……………………………....…..…………..…4, 5, 6

Borden, Inc. v. Spoor Behrins Campbell & Young, Inc.,
735 F. Supp. 587, 591 (S.D.N.Y. 1990)…………………………………………………….9

Carcasole-Lacal v. American Airlines, Inc., 2003 U.S. Dist. LEXIS 11507 (E.D.N. Y. 2003)....12

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)…..8

China Media Express Holdings, Inc. v. Nexus Exec. Risks, Ltd., 2016 U.S. Dist. LEXIS 58158
(S.D.N.Y. 2016)…………………………………………………………………………….13

Conley v. Gibson, 355 U.S. 41, 47 (1957))…………………………………………….…4

DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242 (2d Cir. 1987)……………….6

Doehla v. Wathne Limited, Inc., 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. 1999)………………6

Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 345, 125 S. Ct. 1627,
161 L. Ed. 2d 577 (2005)………………………………………………………………….5

ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,
553 F.3d 187, 196 (2d Cir. 2009)…………………………………………….……..…5, 6

Food and Allied Service Trades Dept., AFL-CIO v. Millfeld Trading Co., 841 F. Supp. 1386, 1391
(S.D.N.Y. 1994)………………………………………………………………………...9

Furia v. Furia, 116 A.D.2d 694 (2nd Dept.1986)…………………………………………11

Hebrew Inst. For Deaf and Exceptional Children v. Kahana, 57 A.D.3d 734 (2d Dep't 2008)…..10

In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014)………………………..6

Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302 (2011)……………8

Lobatto v. Berney, 1999 U.S. Dist. LEXIS 13224 (S.D.N.Y. 1999)……………………………...6

Longo v. Butler Equities II, L.P., 278 A.D.2d 97, 718 N.Y.S.2d 30 (1st Dept. 2000)…………..10

Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)……………………………7

O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)……………7

Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)…………...…………………………….5

Schlegel Mfg. Co. v. Cooper's Glue Factory, 231 N.Y. 459…………………………….…...12

Schumaker v. Mather, 133 N.Y. 590, 595, 30 N.E. 755 (1892)………………………………….10

SEC v. McNulty, 137 F.3d 732, 741 (2d Cir.)………………………………………………….7

Shanklin v. SEC, 525 U.S. 931 (1998)…………………………………………………………7

Shields v. Citytrust Bancorp., Inc., 25 F.3d (2d Cir. 1994)……………………………...…6, 7

Sidamonidze v. Kay, 304 A.D.2d 415, 757 N.Y.S.2d 560 (1st Dept. 2003)……………………..10

Slayton v. Am. Express, Co., 604 F.3d 758, 766 (2d Cir. 2010)…………………………….…6

Sud v. Sud, 211 A.D.2d 423 (2nd Dept.1995)…………………………………………….….11

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319, 127 S. Ct. 2499,
168 L. Ed. 2d 179 (2007)………………………………………………………….…5

**Statutes**

Fed. R. Civ. P. 9(b) ……………………………………..…………………………………….2,3,4,5

Fed. R. Civ. P. 12(b)(1)…………………………………………………………………………...1

Fed. R. Civ. P. 12(b)(6)..…………………………………………………………...……….1,2,3

15 U.S.C.S. § 78a et seq……………………………………………………………….. 1

15 U.S.C. §§ 78u-4(b)(1), (2)…………………………………………………….......……5

Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, §§ 101-02,
109 Stat. 737, 747 (1995) …………………………………………………………7

17 C.F.R. § 240.12b-2 (for 1934 Act)………………………………………………….9

17 C.F.R. § 230.405 (for 1933 Act)………………………………………………….9

2 N.Y. PJI 4:1, at p. 594 (2006)……………………………………………….....8

28 U.S.C. §1658(b)………………………………………………………….....10

Defendant Ramon Tallaj ("Tallaj") brings this motion seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6) as to all claims against Defendant Tallaj for insufficient pleading and failure to state a claim; and to compel arbitration pursuant to Fed. R. Civ. P. 12(b)(1).

**Preliminary Statement**

Plaintiffs base their (1) securities fraud in violation of 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. § 78a et seq. ("1934 Act"), (2) control person liability under section 20(a) of the 1934 Act, (3) fraud and conspiracy, and (4) breach of contract claims upon the allegations that Plaintiffs had a meeting with Defendant Tallaj and that he purportedly said an investment in Defendant Cuatro LLC ("Cuatro") is a good investment.

Plaintiffs wholly fail to identify who Defendant Tallaj is, what his connection to Cuatro might be, what duty Tallaj owed to Plaintiffs, and what contract – whether express or implied – he breached. There is nothing connecting the dots between Defendant Tallaj and Plaintiffs aside from Plaintiffs' conclusory allegations. Worse, whatever conclusory allegations are included in the complaint fail to create any rational connection between Tallaj and Cuatro.

Furthermore, as discussed further below, all parties who invested in Cuatro were required to execute investment documents which included Cuatro's operating agreement containing a binding arbitration clause. If Plaintiffs did invest in Cuatro, as they allege, then Plaintiffs must submit to such binding arbitration.

In sum, Plaintiffs' Amended Complaint is wholly deficient in both form and substance and accordingly should be dismissed against Defendant Tallaj with prejudice.

**Statement of Facts**

Defendant Tallaj refers the Court to the facts as alleged in the Complaint and provides additional factual background below.

1

Tallaj is a medical internist who practices in New York City, and the President and owner of two medical offices: (a) Academy Medical Care PC, located at 571 Academy Street, New York, New York 10034, and (b) A W Medical Office PC, located at 1624 University Blvd, Bronx, New York 10453.  See Declaration of Ramon Tallaj dated May 23, 2016, at ¶2 ("Tallaj Decl.").   Tallaj is affiliated with multiple hospitals in the area, including Bronx-Lebanon Hospital Center and Montefiore Medical Center.  Id. at ¶3.  Tallaj attended and graduated with honors from medical school in 1981 from Universidad Nacional Pedro Henriquez Urena and did his residency training at St. Lukes Roosevelt in New York.  Id.

Tallaj is also the President and Chairman of the Board of The Corinthian Medical IPA, Inc. ("Corinthian").  Id. at ¶4.  Corinthian is owned and managed by practicing community providers who provide medical services to patients within the New York City and surrounding counties.  Id. Corinthian has contractual relations with many of New York's Health Maintenance Organizations (HMOs), to include but not limited to: WellCare, Fidelis, Healthfirst, MetroPlus, Amerigroup, Empire and Defendant Cuatro LLC d/b/a Access Medicare ("Cuatro").  Id. at ¶5.

It is within this context that Mariya Tolcheva and Vladislav Tolchev ("Plaintiffs") sought a meeting with Tallaj.  Id. at ¶6.  Plaintiffs were in the process of opening an Adult Day Care facility in the Bronx and they reached out to Tallaj for assistance in helping them obtain HMO contracts for their adult day care facility.  Id.  Mariya Tolchev also approached Tallaj to discuss the possibility of a partnership in opening an Adult Day Care facility in upper Manhattan.  Id. at ¶7.  Despite several discussions and a few meetings the partnership never materialized.  Id.

During one such meeting, Tallaj explained the role of Corinthian in negotiating contracts with third party HMO payers on behalf of Corinthian's network of providers and that Corinthian regularly has dinner meetings with its downstream providers which are attended by various

organizations such as HMOs, Hospitals, pharmaceutical representatives, regulatory health care attorneys and other health care industry service providers.  Id. at ¶8.  The purpose of these dinner meetings are to educate and inform the Independent Practice Association (IPA) downstream providers of what is new and/or required of them to operate a successful medical office in the highly regulated health care industry of New York.  Id.

Plaintiffs appeared eager to market their Adult Day Care facility to the IPA providers who attend such dinner meetings.  Id. at ¶9.  It was Tallaj's impression that they wished to introduce themselves and their adult day care facility to potential referral sources.  Id.  Plaintiffs offered to host an IPA dinner meeting at their Adult Day Care facility located in the Bronx, New York.  Id.

Plaintiffs thereafter hosted an IPA dinner meeting at their Bronx adult day care facility which was attended by Defendant Cuatro.  Id. at ¶10.  During the meeting, Cuatro, which was at the time a newly licensed New York Medicare Advantage Plan, was introduced to the IPA downstream providers who were in attendance.  Id.

During the meeting, Tallaj spoke as President of Corinthian, as Tallaj always did during such meetings.  Id. at ¶11.  Tallaj did not speak for or on behalf of Cuatro as Tallaj was not – and never was - an employee, officer, director, manager, or agent of Cuatro.  See Tallaj Decl. at ¶11, Exhibit A at 22 (Cuatro Private Placement Memorandum listing managing members, key directors, executive officers, and key employees, none of which are Tallaj).  Tallaj introduced Cuatro representatives to the IPA downstream providers in attendance, whereupon such representatives had an opportunity to speak about the benefits of Cuatro as a Medicare Advantage Plan.  Id. at ¶11.  Such Cuatro representatives also indicated they would provide private placement memoranda to anyone interested in investing in Cuatro.  See Tallaj Decl. at ¶11, Exhibit A.

3

Since Tallaj personally believed that Cuatro would be a successful HMO, Tallaj invested in Cuatro. See Tallaj Decl. at ¶12, Exhibit B (Tallaj-Cuatro Investment Documents). Aside from his personal investment, Tallaj has absolutely no relationship with Cuatro as an officer, director, manager, agent, or employee. Tallaj Decl. at ¶12.

His only other relationship with Cuatro is that, as President of Corinthian, Tallaj negotiated a medical provider contract between Corinthian and Cuatro in the same manner and fashion as Tallaj has negotiated numerous contracts with many other HMOs. Id. at ¶13. The contract negotiated between Corinthian and Cuatro was then presented to Corinthian providers who elected to accept or decline participating in Cuatro as an HMO. Id.

## LEGAL ARGUMENT

### I.      The Claims Cannot Withstand the Standard for Dismissal for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

A Complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires "only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007) (*quoting* Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The plausibility standard requires the Complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A Complaint satisfies the plausibility standard

4

when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (*citing* Twombly, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A Complaint which pleads facts "'merely consistent with' a defendant's liability, [] 'stops short of the line between possibility and plausibility of 'entitlement of relief.'" Id. (*citing* Twombly, 550 U.S. at 557).

A complaint alleging securities fraud must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") by stating the circumstances constituting fraud with particularity. See, e.g., ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)). These requirements apply whenever a plaintiff alleges fraudulent conduct, regardless of whether fraudulent intent is an element of a claim. Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.'" (quoting Fed. R. Civ. P. 9(b))).

Specifically, Rule 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent. See, e.g., Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012) (citing Rombach, 355 F.3d at 170). Like Rule 9(b), the PSLRA requires that securities fraud complaints "'specify' each misleading statement," set forth the reasons or factual basis for the plaintiff's belief that the statement is misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 345 (2005) (quoting 15

U.S.C. §§ 78u-4(b)(1), (2)); see also, e.g., Slayton v. Am. Express, Co., 604 F.3d 758, 766 (2d Cir. 2010).

These heightened pleading standards, when viewed together with the more general standards applicable to Rule 12(b)(6) motions to dismiss under Twombly and Iqbal, make clear that "plaintiffs must provide sufficient particularity in their allegations to support a plausible inference that it is more likely than not that a securities law violation has been committed." In re Lululemon Sec. Litig., 14 F. Supp. 3d 553, 570 (S.D.N.Y. 2014) (citing ECA & Local 134 IBEW v. JP Morgan Chase Co., 553 F.3d 187, 196).

Furthermore, "where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." DiVittorio v. Equidyne Extractive Industries, Inc., 822 F.2d 1242 at 1247 (2d Cir. 1987); see also, e.g., Lobatto v. Berney, 1999 U.S. Dist. LEXIS 13224, *31 (S.D.N.Y. 1999); Doehla v. Wathne Limited, Inc., 1999 U.S. Dist. LEXIS 11787 (S.D.N.Y. 1999).

*A)      The Complaint Fails to State a Claim Against Tallaj for Securities Fraud in Violation of 10(b) of the 1934 Act*

The Complaint states that Plaintiffs invested in Cuatro based on statements made by Tallaj. The Complaint, however, wholly fails to state what Tallaj's relationship is with Cuatro, save for conclusory allegation that he is an "agent" of Cuatro. The Complaint does not specify the factual basis of such allegation, nor why it would be reasonable for anyone to rely on Tallaj's statements with respect to Cuatro. By Plaintiffs' standards, anyone making any statement about Cuatro to Plaintiffs could be brought into Court for securities fraud. This falls well short of the pleading standards outlined above.

6

A claim under §10 and Rule 10b-5 promulgated thereunder must be pleaded in accordance with Rule 9(b) of the Fed. R. Civ. P. Shields v. Citytrust Bancorp., Inc., 25 F.3d 1124, 1127 (2d Cir. 1994). Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Scienter as required by Rule 9(b) may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995); Shields, 25 F.3d at 1128.

In order adequately to plead motive, a plaintiff must "detail concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged." Shields, 25 F.3d at 1130. To plead opportunity adequately, a plaintiff must allege "the means and likely prospect of achieving concrete benefits by the means alleged." Id. Reckless conduct has been defined as "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." SEC v. McNulty, 137 F.3d 732, 741 (2d Cir.), cert. denied, sub nom Shanklin v. SEC, 525 U.S. 931 (1998) (citation and internal quotations omitted).

Under Second Circuit precedent, a complainant attempting to plead scienter adequately must "allege facts that give rise to a strong inference of fraudulent intent." Acito, 47 F.3d at 52; Shields, 25 F.3d at 1128; Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993); O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); see also Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, §§ 101-02, 109 Stat. 737, 747 (1995) (codifying Second Circuit standard for pleading scienter).

Plaintiffs' complaint does not satisfy the 9(b) standard. Plaintiffs' allegation that Defendant Tallaj was an "agent" of Cuatro, without more, is grossly insufficient to infer fraudulent intent,

motive, opportunity to commit fraud, or even circumstantial evidence of conscious misbehavior or recklessness.  There are no factual allegations alleging Tallaj's motive or opportunity in making such representations, nor are there factual allegations that establish any duties owed by Tallaj to Plaintiffs, nor are there any factual allegations even remotely establishing or suggesting any sort of agency relationship.  "Agency is a factual relationship that cannot simply be pled into existence."  In re Global Crossing, Ltd., Sec. Litig., 2005 U.S. Dist. Lexis 16228, *29 (S.D.N.Y. 2005) (finding that plaintiffs failed to adequately plead an agency relationship in 10(b) case by relying on conclusory allegations of agency).

By Plaintiffs' standard, Tallaj could have told Plaintiffs to invest in Apple, Inc. stock, and if Plaintiffs lost monies as a result, Tallaj would have been hauled into court, along with Apple, Inc., to compensate Plaintiffs for their loss.  Such a result is nonsensical and runs counter to the purpose of §10 and Rule 10b-5, which is to hold issuers liable for their statements – and not impose liability upon third parties simply by calling them "agents" where there is no indication the agency relationship existed or the issuer would have made such statements in the first place.

Indeed, Plaintiffs' claim must also fail because there is no private right of action under Section 10(b) and Rule 10b-5 based upon agency principles.  In Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994), the Supreme Court held that there is no private liability for aiding and abetting under Section 10(b) and Rule 10b-5.  Among the important issues raised by Central Bank is whether a plaintiff may rely on agency principles to state a claim under Rule 10b-5. The U.S. Supreme Court in Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296, 2302 (2011) addressed the issue of the scope of defendants in Rule 10b-5 actions based on allegedly material misrepresentations. It held that only the "maker" of a statement is liable, and defined the "maker" to be "the person or entity with the ultimate

authority over the statement, including its content and whether and how to communicate it." Id.
In light of the above, and Plaintiffs' conclusory allegation that Tallaj is an "agent," Plaintiffs claim
must necessarily fail.

Accordingly, for those reasons, Plaintiffs' first cause of action as against Tallaj should be
dismissed.

B)      *The Complaint Fails to State a Claim Against Tallaj for Control Person Liability Under
Section 20(a) of the 1934 Act*

Plaintiffs do not bother to specify as to which defendants Plaintiffs' second cause of action
for control liability might apply.  Accordingly, Defendant Tallaj addresses it here.

The SEC defines a control person as one having "the possession, directly or indirectly, of
the power to direct or cause the direction of management and policies of a person, whether through
the ownership of voting securities or otherwise." 17 C.F.R. § 240.12b-2 (for 1934 Act); 17 C.F.R.
§ 230.405 (for 1933 Act).

In order to sustain such a motion at the pleading stage, a plaintiff must plead facts which
"support a reasonable inference that they had the potential power to influence and direct the
activities of the primary violator." Food and Allied Service Trades Dept., AFL-CIO v. Millfeld
Trading Co., 841 F. Supp. 1386, 1391 (S.D.N.Y. 1994); Borden, Inc. v. Spoor Behrins Campbell
& Young, Inc., 735 F. Supp. 587, 591 (S.D.N.Y. 1990).

Plaintiffs' second cause of action fails for the absolute absence of any factual allegations
that Defendant Tallaj had the power to influence and direct the activities of Cuatro.  Accordingly,
for those reasons, Plaintiffs' second cause of action as against Tallaj should be dismissed.

C)      *Plaintiffs' Securities Fraud Claims are Untimely*

Defendant Tallaj joins in Defendant Cuatro's argument that Plaintiffs' securities fraud claims are untimely, pursuant to 28 U.S.C. §1658(b), and respectfully refers the Court to Section II(A) of Defendant Cuatro's Motion to Dismiss for the substance of that argument.

### D)    *The Complaint Fails to State a Claim Against Tallaj for Fraud/Conspiracy*

Plaintiffs allege a cause of action for "Fraud/Conspiracy" based on the factual allegations that Tallaj "informed [Plaintiffs] that Cuatro would be sold within two or three months, that they would receive at least twice what they invested when Cuatro was sold, and that they would receive their money back if Cuatro was not sold." Complaint, at ¶32.

As an initial matter, New York law does not recognize a civil claim for conspiracy. See Hebrew Inst. For Deaf and Exceptional Children v. Kahana, 57 A.D.3d 734 (2d Dep't 2008). Accordingly, Plaintiffs conspiracy claim fails as a matter of law.

With respect to fraud, the elements of a claim for fraudulent inducement are: 1) a false representation of material fact, 2) known by the utterer to be untrue, 3) made with the intention of inducing reliance and forbearance from further inquiry, 4) that is justifiably relied upon, and 5) results in damages. Schumaker v. Mather, 133 N.Y. 590, 595, 30 N.E. 755 (1892). Puffery, opinions of value or future expectations do not support a cause of action for fraud. Sidamonidze v. Kay, 304 A.D.2d 415, 757 N.Y.S.2d 560 (1st Dept. 2003); Longo v. Butler Equities II, L.P., 278 A.D.2d 97, 718 N.Y.S.2d 30 (1st Dept. 2000).

Reading the complaint as liberally as required, there is simply no factual support for the proposition that Tallaj made material statements of fact that he *knew to be false* at the time they were purportedly made (aside from Plaintiffs' statement that he did), that he made such purported statements in order to induce reliance, or that such reliance was even remotely justifiable given the

10

fact that Plaintiffs are not even able to articulate what his connection is to Cuatro.  It is similarly impossible to decipher why Tallaj would purportedly go out of his way to make such statements where there is no possible benefit to him that can be deciphered from Plaintiffs' Complaint. Finally, even if, *arguendo*, he had made those statements, the statements that Plaintiffs describe can only be described as puffery, or an opinion of a future value, the determination of which can be influenced by so many factors outside of the control of either party.  Sidamonidze v. Kay, 304 A.D.2d 415.  Plaintiffs' allegations simply do not make sense, and are grossly insufficient to support a claim for fraudulent inducement.

Accordingly for these reasons, Plaintiffs' third cause of action for "Fraud/Conspiracy" must be dismissed as well.

### E)       The Complaint Fails to State a Claim Against Tallaj for Breach of Contract

Plaintiffs' fourth and fifth cause of action are for breach of contract.  Plaintiffs allege, as they do in their prior claims, that there was a breach of contract because (1) Tallaj said he would personally return Plaintiffs' monies if Cuatro did not; and (2) Tallaj did not "return" Plaintiffs' monies.  Complaint ¶¶37-42.  Plaintiffs further appear to allege that Tallaj is also liable for breach of contract because Cuatro has breached its obligations pursuant to certain agreements between Plaintiffs and Cuatro.  Complaint ¶¶37-42.

The elements of a cause of action for breach of contract are the existence of a contract between the plaintiff and defendant, consideration, performance by the plaintiff, breach by the defendant and damages resulting from the breach.  Furia v. Furia, 116 A.D.2d 694 (2nd Dept.1986).  Plaintiff must establish the provisions of the contract the defendant is alleged to have breached.  Sud v. Sud, 211 A.D.2d 423 (2nd Dept.1995); and Atkinson v. Mobil Oil Corp., 205 A.D.2d 719 (2nd Dept.1994).

11

If Plaintiffs allege there was an oral agreement between Plaintiffs and Tallaj, then it wholly fails for lack of consideration.  Plaintiffs allege they gave monies to Cuatro, not Dr. Tallaj.  It is incomprehensible how or why there would, or could, be an agreement whereby Tallaj would give $200,000 to Plaintiffs (the extent of Plaintiffs' alleged investment) when there was no consideration exchanged for Tallaj to do so – and frankly, no logical reason for him to do so either.  Accordingly, such an agreement would fail for lack of consideration.  See Schlegel Mfg. Co. v. Cooper's Glue Factory, 231 N.Y. 459 (contract void for lack of consideration).

If Plaintiffs allege a contract between Plaintiffs and Cuatro, as they seem to do in their fifth cause of action, it is unclear what Tallaj has to do with those separate agreements.  There are no allegations that Tallaj was a party to such agreements, or that he executed them on behalf of Cuatro, or that he contractually obligated himself in any way pursuant to such agreements.  Accordingly, such a claim must fail for lack of privity.  See Carcasole-Lacal v. American Airlines, Inc., 2003 U.S. Dist. LEXIS 11507 (E.D.N. Y. 2003) (breach of contract claim held "fatally deficient" in absence of contractual relationship between parties).

Plaintiffs' breach of contract allegations cannot make any logical sense with respect to Tallaj, and appear to be merely phrased as duplicative causes of action based on fraudulent inducement.  Accordingly, they fail in their entirety.

## II.     Plaintiffs Should be Compelled to Arbitrate Their Claims Pursuant to the Operating Agreement that They Executed

As described in the Tallaj Declaration, Cuatro circulated a Private Placement Memorandum containing Cuatro's Operating Agreement to individuals expressing an interest in investing in Cuatro.  See Tallaj Decl. ¶11, Exhibit A (Private Placement Memorandum with Operating Agreement).  Section 15.11 of such Operating Agreement requires each party to submit to binding arbitration in accordance with the terms of such Operating Agreement.  Id. at page 71

If Plaintiffs invested in Cuatro, as they allege, any dispute arising as a result of such investment is subject to binding arbitration.  See Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied"); China Media Express Holdings, Inc. v. Nexus Exec. Risks, Ltd., 2016 U.S. Dist. LEXIS 58158 (S.D.N.Y. 2016) (compelling the parties to arbitration pursuant to an arbitration clause).

Accordingly, Plaintiffs should be compelled to arbitration and their complaint dismissed.

**CONCLUSION**

For all the reasons set forth above, this Court should dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted.

Dated: New York, New York
       June 10, 2016

**MEDENICA LAW PLLC**

By: _____
Olivera Medenica
3 Columbus Circle, 15th Fl.
New York, New York, 10019
Tel: (212) 785-0070
Fax: (646) 514-5302
*Attorneys for Defendant*
*Ramon Tallaj*